**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**$405,089.23 U.S. CURRENCY,
et al., Defendants.**

**Charles Arlt; James Wren; Payback
Mines, Claimants–Appellants.**

**No. 93–55947.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 12, 1994.*

Decided Sept. 6, 1994.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Circuit Rule 34–4.

Charles Wesley Arlt, Lompoc, CA, and James Eli Wren, Lompoc, CA, pro se, for claimants-appellants.

Mark A. Feldman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: POOLE and REINHARDT, Circuit Judges, and TANNER,** District Judge.

REINHARDT, Circuit Judge:

This case involves the constitutional limits on the government's ability to seek criminal penalties and civil forfeiture based on the same violations of law. The government brought a criminal prosecution against the claimants at approximately the same time as it instituted this separate and parallel civil forfeiture action under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). The question is whether the government violated the Double Jeopardy Clause of the Fifth Amendment by obtaining convictions in the criminal case and then continuing to pursue the forfeiture action. We answer the question in the affirmative and reverse the order of forfeiture.

## I.

Claimants James Wren, Charles Arlt, and Payback Mines appeal pro se the forfeiture of their property following Wren and Arlt's criminal convictions of various counts of conspiracy and money laundering. In the criminal case, Arlt, Wren, and several others had been accused of conducting a large-scale methamphetamine manufacturing operation. Through a series of front corporations, including Payback Mines, the defendants had sought to create the appearance that they were engaging in legitimate gold mining activities.

The government instituted this civil forfeiture action on June 17, 1991, five days after the grand jury issued a superseding indictment in the parallel criminal case. The forfeiture complaint listed several hundred thousand dollars' worth of property: $405,-089.23 in a Security Pacific Bank account;

$8,929.93 in three Bank of America accounts; $123,000 in cash and 138 silver bars seized at Mayhill Bail Bonds; one Bell 47 G–2 helicopter; one shrimp boat; a Piper 6 Cherokee airplane; and eleven automobiles and one boat purchased at an auction. The government argued that these pieces of property were connected to the offenses that were the subject of the parallel criminal case. It claimed that the property was forfeitable on two independent grounds: as proceeds of illegal narcotics transactions under 21 U.S.C. § 881(a)(6), and as property "involved in" money laundering violations under 18 U.S.C. § 981(a)(1)(A). Arlt, Wren, and Payback Mines filed claims to the res. Pursuant to a stipulation between the parties, the district court effectively stayed the civil forfeiture action pending the completion of the parallel criminal case.

The criminal case terminated on March 27, 1992, with the convictions of Arlt, Wren, and their codefendants. Over eight months later, on December 4, the government filed a motion for summary judgment in the parallel forfeiture action. The government's motion relied on the criminal conviction, a declaration submitted by I.R.S. Special Agent Phillip Mullins, and various pieces of documentary evidence. Asserting that this evidence established probable cause and therefore shifted the burden of proof to the claimants, *see* 19 U.S.C. § 1615, the government claimed that the claimants had failed to demonstrate that the property was not subject to forfeiture.

On April 1, 1993, the district court granted the government's motion and entered a judgment ordering that the entire res be forfeited to the United States. Adopting the government's proposed statement of uncontroverted facts and conclusions of law with only a few minor alterations, the district court held that "[t]he convictions of Arlt, Wren and Hill of conspiracy to aid and abet the manufacture of methamphetamine, conspiracy to launder monetary instruments, and money laundering are sufficient for probable cause by themselves." The court also noted several addi-

---

** Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

tional factors, relating to specific pieces of property, which bolstered its conclusion that the government had established probable cause. For example, the court noted that $123,000 is an extremely large amount of cash, that Arlt, Wren, and Hill had signature authority over several of the bank accounts, and that the vehicles were purchased with cash and placed in the name of Arlt's business, Payback Mines. The district court concluded that the government had established probable cause under both its "narcotics proceeds" theory and its "money laundering" theory. Because the claimants did not introduce any evidence tending to show that the property was not subject to forfeiture, the court granted summary judgment in favor of the government. Arlt, Wren, and Payback Mines appeal pro se.

## II.

■ On appeal, Arlt, Wren, and Payback Mines claim that the government lacked probable cause to institute these proceedings, that the Double Jeopardy Clause of the Fifth Amendment bars this action, that the forfeiture violates the Excessive Fines Clause of the Eighth Amendment, and that the district court lacked in rem jurisdiction over a small part of the res. Where reversal of the district court's judgment on one ground would bar further proceedings against a party opposing the government, while reversal on other grounds would afford less than complete relief to that party, we first decide the issue which would afford complete relief. Here, the Double Jeopardy Clause argument, if successful, would result in a complete bar to the maintenance or reinstitution of these proceedings, while the relief sought on the other grounds would not. Thus, we begin with the Double Jeopardy Clause.[1] In this

case, because we hold that the clause is applicable and bars further proceedings, we end with it as well.[2]

## A.

■ The most basic element of the Double Jeopardy Clause is the protection it affords against successive prosecutions—that is, against efforts to impose punishment for the same offense in two or more separate proceedings. That protection applies with equal force whether the first prosecution results in a conviction or an acquittal. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Whatever other abuses the Clause prohibits, at its most fundamental level it protects an accused against being forced to defend himself against repeated attempts to exact one or more punishments for the same offense. "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts." *Abbate v. United States*, 359 U.S. 187, 198–99, 79 S.Ct. 666, 672–73, 3 L.Ed.2d 729 (1959) (opinion of Brennan, J.). This principle is "deeply ingrained in at least the Anglo–American system of jurisprudence," *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), and, in fact, traces its roots "deep into Greek and Roman times." *Bartkus v. Illinois*, 359 U.S. 121, 151–52, 79 S.Ct. 676, 695–96, 3 L.Ed.2d 684 (1959) (Black, J., dissenting).

■ There can be little doubt that this case implicates the core Double Jeopardy

---

**1.** The claimants did not raise the double jeopardy argument in the district court. However, they rely on the Supreme Court's decision in *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which was decided after the district court's judgment in this case. The government has responded to the claimants' argument on the merits, and it has not asserted that the claimants waived the double jeopardy defense. Accordingly, we consider the issue to be properly before us.

**2.** Although the claimants' relief would be incomplete if we were to rest our decision on probable cause, and thus we do not reach that ground, it seems clear that the government lacked such cause for the institution of these proceedings. In seeking to satisfy its probable cause burden, the government relies almost exclusively on Arlt's and Wren's criminal convictions. Because these convictions were not obtained until *after* the institution of this forfeiture action, it may not do so. *See United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1066–71 (9th Cir.1994).

protection. Over a year after the claimants' criminal convictions, a different district judge in a different proceeding awarded the government title to nearly all of the claimants' property, because of its connection with the *very offenses* that resulted in criminal punishment. The forfeiture complaint in this case was based on precisely the same conduct addressed in the claimants' criminal case, and it sought to forfeit title to the claimants' property on the basis of precisely the same violations of the same statutes. In short, this civil forfeiture action and the claimants' criminal prosecution addressed the identical violations of the identical laws; the only difference between the two proceedings was the remedy sought by the government. Yet the government could have sought both remedies without subjecting Arlt and Wren to multiple and successive proceedings. It could have included a criminal forfeiture count in the indictment which led to the claimants' convictions. However, it did not choose to follow that course. Rather, it elected to pursue its forfeiture action in a separate and parallel proceeding, which was decided after the criminal trial. By doing so, the government prevented Arlt and Wren from "being able, once and for all, to conclude [their] confrontation with society" at the time of the jury's verdict. *United States v. Jorn*, 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.).

■ The government's actions in this case clearly raise substantial double jeopardy concerns. However, to determine whether these actions violate the Fifth Amendment, we must consider two questions: whether the civil forfeiture action and the claimants' criminal prosecution constituted separate "proceedings," and whether civil forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) constitutes "punishment." If the answer to both of these questions is yes, then the government's actions constituted a

successive attempt to impose punishment, in violation of the Double Jeopardy Clause.

■ For the reasons we have expressed above, we have little difficulty in determining that this civil forfeiture proceeding constitutes a separate "proceeding" from the prosecution which resulted in the claimants' criminal convictions. We recognize that the Second and Eleventh Circuits have recently held in cases like this one that criminal prosecutions do not constitute separate "proceedings" from parallel civil forfeiture actions for double jeopardy purposes. *See United States v. One Single Family Residence*, 13 F.3d 1493, 1499 (11th Cir.1994); *United States v. Millan*, 2 F.3d 17, 20 (2d Cir.1993). Those courts relied on the fact that the forfeiture actions and criminal prosecutions took place at approximately the same time and involved the same criminal violations, and were part of a "single, coordinated prosecution." *One Single Family Residence*, 13 F.3d at 1499. For that reason, the Second and Eleventh Circuits refused to conclude that the parallel criminal and civil actions constituted separate "proceedings." However, we believe that the position adopted by the Second and Eleventh Circuits contradicts controlling Supreme Court precedent as well as common sense.

■ We fail to see how two separate actions, one civil and one criminal, instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same "proceeding."[3] In ordinary legal parlance, such actions are often characterized as "parallel proceedings," but not as the "same proceeding." A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time.[4] The government could have sought criminal forfeiture in this case pursuant to 18 U.S.C. §§ 982, 3554 and 21 U.S.C. § 853. If it had

---

**3.** *Cf. Abbate*, 359 U.S. at 202, 79 S.Ct. at 674–75 (Black, J., dissenting) ("The legal logic used to prove one thing to be two is too subtle for me to grasp.").

**4.** We do not mean to suggest that the Double Jeopardy Clause prevents a forfeiture count from

being tried separately from other criminal counts based on the same offense if the defendant *consents* to separate trials. Nor do we express any view as to bifurcated proceedings before the same fact-finder and presiding judicial officer.

done so and included the forfeiture count in the same indictment as the other criminal counts and then proceeded to trial against the defendants on all counts, the forfeiture case and the criminal prosecution would have constituted the "same proceeding."[5] However, the government chose to proceed against the claimants on two separate fronts—in two separate, parallel proceedings. Because the district court followed the customary practice and held the civil action in abeyance pending the outcome of the criminal prosecution, the government obtained a significant advantage: if it succeeded in the criminal case it could obtain summary judgment based on the conviction (assuming of course that it had probable cause at the time it instituted the forfeiture action), while if it lost it could still seek forfeiture and urge that the more lenient standards applicable in civil proceedings applied. *See* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 10.01, at 10–4 to 10–5 (1993) (noting that it is to the government's advantage to have the civil forfeiture action heard after the criminal case). We believe that such a coordinated, manipulative prosecution strategy heightens, rather than diminishes, the concern that the government is forcing an individual to "run the gantlet" more than once. *Green,* 355 U.S. at 190, 78 S.Ct. at 225. We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of "single, coordinated prosecution."[6]

In fact, the Supreme Court has made clear that parallel actions, instituted at about the same time and involving the same criminal conduct, constitute *separate* proceedings for double jeopardy purposes. *See Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). In *Jeffers,* the government initiated parallel *criminal* actions against the same defendant based on the same conduct by bringing two separate indictments on the same day. One indictment charged a conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The other indictment charged Jeffers with conducting a continuing criminal enterprise to violate the drug laws, in violation of 21 U.S.C. § 848. Jeffers opposed the government's motion to join the offenses for trial, and the district court denied the motion. After the first jury convicted Jeffers of the conspiracy count, he moved to dismiss the continuing criminal enterprise case on double jeopardy grounds. The district court held that 21 U.S.C. §§ 846 and 848 constituted separate offenses for double jeopardy purposes, and accordingly denied the motion. The Seventh Circuit affirmed on the same ground.

In affirming the judgment of Seventh Circuit, the Supreme Court explicitly rejected that court's reasoning. It held that 21 U.S.C. § 846 was a lesser included offense of 21 U.S.C. § 848. Accordingly, the two statutes stated the "same offense" under the *Blockburger* test, and the second and separate prosecution would ordinarily have been barred by the Double Jeopardy Clause. *See Jeffers,* 432 U.S. at 147–51, 97 S.Ct. at 2214–16 (plurality opinion); *id.* at 158, 97 S.Ct. at

---

5. Such an attempt to impose multiple punishments in the same proceeding would satisfy the Double Jeopardy Clause so long as the legislature intended to impose *both* criminal forfeiture and the more standard criminal penalties for a violation of the criminal statutes at issue here. *See Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The issue in such a case would simply be one of statutory construction.

6. Were we to consider successive attempts to exact punishment to constitute the "same proceeding" under the Double Jeopardy Clause simply because they were brought as part of a "single, coordinated prosecution," we would be encouraging one of the worst abuses of prosecutorial power—the government's coordinated use of multiple proceedings to harass or exhaust particular defendants. In one prominent recent example, the federal government unsuccessfully sought to engage in a coordinated campaign of multiple prosecutions in an attempt to shut down one of the largest retail distributors of sexually oriented literature in the United States. *See United States v. P.H.E., Inc.,* 965 F.2d 848, 850–53 (10th Cir.1992) (describing this campaign); *PHE, Inc. v. United States Dep't of Justice,* 743 F.Supp. 15, 17–20 (D.D.C.1990) (same). In the cited cases, the Tenth Circuit ordered a hearing regarding whether an indictment arising from this scheme should be dismissed on the grounds of prosecutorial vindictiveness, *see* 965 F.2d at 860, and the District Court for the District of Columbia issued a preliminary injunction against further prosecution of the scheme. *See* 743 F.Supp. at 27.

2220 (Stevens, J., dissenting in part and concurring in the judgment in part). However, the plurality of four justices held that, by opposing the government's motion for joinder, Jeffers had waived any objection to the maintenance of separate proceedings. *See id.* at 152, 97 S.Ct. at 2217 (plurality opinion) ("[A]lthough a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election."). In dissent, Justice Stevens (joined by three other justices) argued that Jeffers had not waived any double jeopardy objection, and that a separate trial on the second indictment was accordingly barred. *See id.* at 158–60, 97 S.Ct. at 2220–21 (Stevens, J., dissenting in part and concurring in the judgment in part). In short, the decisions of eight of the nine justices in *Jeffers* rested on the common sense proposition that two parallel criminal cases, which unquestionably were brought as a part of a "single, coordinated prosecution," constituted "separate proceedings" for double jeopardy purposes.[7] *See also Missouri v. Hunter,* 459 U.S. 359, 360, 366, 367, 368, 369, 103 S.Ct. 673, 675, 678, 678–79, 679, 679–80, 74 L.Ed.2d 535 (1983) (stating that there is no double jeopardy bar to the imposition of multiple punishments at a "single *trial*") (emphasis added); *see also id.* at 365, 103 S.Ct. at 677–78 ("Because respondent has been subjected to *only one trial,* it is not contended that his right to be free from *multiple trials* for the same offense has been violated.") (emphasis added). We can discern no reason why two proceedings should be deemed one when one of the proceedings involves a criminal prosecution and the other a civil forfeiture action. We conclude, therefore, that whether or not two actions are brought as part of a "single, coordinated prosecution" is irrelevant for purposes of the Double Jeopardy Clause: a civil forfeiture action which is brought and tried separately from a criminal prosecution and is based upon the same offense constitutes a separate "proceeding." Thus, we must turn to the question whether the forfei-

ture the government seeks to impose constitutes "punishment."

**B.**

 A decade ago, the law was clear that civil forfeitures did not constitute "punishment" for double jeopardy purposes. In *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), the Supreme Court held that the claimant's prior acquittal on criminal charges did not bar a subsequent action for forfeiture under 18 U.S.C. § 924(d). Applying the test set forth in *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980), the Court concluded that Congress intended for forfeiture to be "a remedial civil sanction." *89 Firearms,* 465 U.S. at 363, 104 S.Ct. at 1105. Accordingly, it held that the Double Jeopardy Clause did not apply.

The *Ward* test, on which the Supreme Court rested its double jeopardy holding in *89 Firearms,* focused heavily on the label Congress had attached to a particular sanction. If Congress indicated a preference that the proceeding be denominated "civil" rather than "criminal," the Court would defer to that preference except in extraordinary circumstances. *See Ward,* 448 U.S. at 248, 100 S.Ct. at 2641. However, as sometimes happens, the Court changed its collective mind. It abandoned the *Ward* approach in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). There, the Court held that "the labels 'criminal' and 'civil' are not of paramount importance" in determining whether a sanction constitutes punishment for double jeopardy purposes: "The notion of punishment, as we understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads." *Id.* at 447–48, 109 S.Ct. at 1901. Applying these principles, the Court adopted a new test for determining whether a nominally civil sanction constitutes

---

**7.** The ninth justice, Justice White, did not discuss this issue, because he concluded that 21 U.S.C. § 846 was not a lesser included offense of 21 U.S.C. § 848.

"punishment" for double jeopardy purposes: "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as *also* serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 448, 109 S.Ct. at 1902 (emphasis added). Just last year it reaffirmed its new-found wisdom, emphasizing again that a sanction which is designed even in part to deter or punish will constitute punishment, regardless of whether it also has a remedial purpose. *See Austin v. United States,* — U.S. —, —, —, 113 S.Ct. 2801, 2806, 2812, 125 L.Ed.2d 488 (1993); *see also United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994) ("Appellants contend that the above quoted language means that unless a sanction is 'solely' remedial, i.e., not serving deterrent or retributive ends, it is punishment. This position is confirmed by the recent Supreme Court decision in *Austin v. United States.*").

*Halper* involved a civil action brought under the False Claims Act. In *United States v. McCaslin,* 959 F.2d 786 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992), we underestimated its force and refused to apply its rationale in a civil forfeiture action brought under 21 U.S.C. § 881(a)(7). We held that *"Halper* has no application to the very ancient practice by which instrumentalities of a crime may be declared forfeit to the government." *McCaslin,* 959 F.2d at 788. However, in its subsequent decision in *Austin,* the Supreme Court said that we were wrong and directly rejected our *McCaslin* analysis. In *Austin,* the Court specifically applied the *Halper* test to determine whether a civil forfeiture under 21 U.S.C. §§ 881(a)(4) & (a)(7) constituted "punishment," and it concluded that those provisions did in fact impose punishment under that test. *See Austin,* — U.S. at —, 113 S.Ct. at 2812 ("In light of the historical understanding of forfeiture as punishment,

the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood these provisions as serving to deter and to punish, we cannot conclude that forfeiture under §§ 881(a)(4) and (a)(7) serves solely a remedial purpose.") (citing *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901–02).

As the government notes, the specific holding in *Austin* was that the Eighth Amendment's Excessive Fines Clause applies to civil forfeiture actions. However, in determining whether the Excessive Fines Clause applied, the Court found it necessary to determine, as we are required to determine here, whether the forfeiture statutes at issue constituted *"punishment."* It employed the *Halper* test—the same test it had used to decide whether a civil monetary penalty constituted "punishment" for purposes of the Double Jeopardy Clause—in making that determination. We believe that the only fair reading of the Court's decision in *Austin* is that it resolves the "punishment" issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause. In short, if a forfeiture constitutes punishment under the *Halper* criteria, it constitutes "punishment" for purposes of *both* clauses.[8] *See* Smith, *supra,* ¶ 12.10[2], at 12–131 ("The Supreme Court's decision in *Austin v. United States,* makes it clear that *Halper's* double jeopardy protections do apply to the vast majority of civil forfeiture cases.") (footnote omitted). In light of the decision in *Austin,* and applying the *Halper* test here, we find the conclusion inescapable that civil forfeiture under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) constitutes "punishment" which triggers the protections of the Double Jeopardy Clause.

The government argues that the *Austin* Court's reasoning does not apply to the for-

---

8. To make it clear, we hold only that because the method of determining whether the forfeiture constitutes punishment is identical, the answer to the question whether a particular forfeiture constitutes punishment will always be the same for purposes of the Double Jeopardy Clause and the Eighth Amendment. Whether a violation of either clause exists involves factors that are differ-

ent with respect to each clause. Thus, even though we may conclude that a particular forfeiture may involve "punishment," we could still conclude, depending on the facts in the case before us, that both clauses were violated, neither clause was violated, or a violation of one but not the other occurred.

feitures in this case. It asserts that *this* forfeiture involves only narcotics proceeds, and that such a forfeiture is entirely remedial. The government's position finds support in a recent Fifth Circuit case. *See United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994) (stating that the forfeiture of illegal proceeds does not constitute punishment).[9] We nonetheless reject that argument. We do so because the government fails to recognize the legal standard that *Austin* established.

 Under *Austin*, in order to determine whether a forfeiture constitutes "punishment," we must look to the entire scope of the statute which the government seeks to employ, rather than to the characteristics of the specific property the government seeks to forfeit. The government appears to assume that we must determine in each case whether the particular forfeiture is so excessive in relation to any remedial goal that it must be denominated as "punishment." However, the *Austin* Court explicitly refused to apply such a case-by-case approach to determining whether a forfeiture constitutes "punishment." *See Austin*, ── U.S. at ── n. 14, 113 S.Ct. at 2812 n. 14. Rather, largely because "forfeiture statutes historically have been understood as serving not simply remedial goals but also those of punishment and deterrence," *id.*, the Court held that any determination of whether those forfeitures constitute "punishment" must look to the requirements of the forfeiture *statute* as a whole. *See* Smith, *supra*, ¶ 12.10 at 12–13 ("the *Austin* Court thought that in the forfei-

ture context it made sense to focus on the forfeiture statute as a whole."). In so doing, the Court adopted a categorical approach to "punishment" determinations in the forfeiture context, much like the categorical approach it has adopted for determining whether a particular statute defines a "violent felony" for purposes of the Firearms Owners' Protection Act. *See Taylor v. United States*, 495 U.S. 575, 600–02, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1005–1010 (9th Cir.1988).[10] To determine whether the forfeiture the government seeks to impose in these proceedings constitutes "punishment," we must focus on the characteristics of the forfeiture statutes on which it relies.

While the government appears to rely principally on its argument that the res consists entirely of illegal proceeds,[11] we will also construe its argument, generously, as contending that the forfeiture *statutes* involved are limited to the forfeiture of illegal proceeds, and that they therefore do not impose "punishment." This argument not only misconceives the legal standard established in *Austin* but also misstates the scope of the statutes involved. In determining that forfeitures under §§ 881(a)(4) & (a)(7) constituted "punishment" under the *Halper* test, the *Austin* Court relied on three facts. First, the Court noted that "the historical understanding of forfeiture as punishment" weighed heavily in favor of the conclusion that forfeiture continues to serve punitive purposes. *Austin*, ── U.S. at ──, 113 S.Ct. at 2812. Second, the Court discerned a

---

9. The government also relies on the Fourth Circuit's pre-*Austin* decision in *United States v. Borromeo*, 995 F.2d 23, 27 (4th Cir.1993). For the reasons set forth in the text, we believe that *Borromeo* does not survive *Austin*.

10. The Court's decision in *Austin* to focus on the forfeiture statute, rather than on the particular conduct alleged by the government, in determining whether the Double Jeopardy Clause applies is also consistent with its decision the same term in *United States v. Dixon*, ── U.S. ──, ──, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). *Dixon* held that, to determine whether two prosecutions are for the same "offense" under the Double Jeopardy Clause, a court must look to the elements of the statutory offenses charged, rather than the conduct which is alleged to underlie these offenses in the particular case.

11. If we were to look to the particular facts of this case, it is far from clear that we would accept the government's argument that the entire res consists of narcotics proceeds. The government apparently believes that we can conclude that money and property are derived from narcotics transactions simply because people with an interest in that property have been convicted of engaging in a narcotics conspiracy. Because, with few exceptions, the government has not provided any evidence of a more specific link between narcotics transactions and the property at issue, it would be most difficult, on the record before us, to conclude that the property consists entirely of illegal proceeds.

punitive purpose from "the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner." *Id.* According to the *Austin* Court, this focus was evident from the fact that the statutes "expressly provide an 'innocent owner' defense," and thus authorize forfeiture only where the owner is himself involved in illegal activity. *Id.* —— U.S. at ——, 113 S.Ct. at 2810. Finally, the Court in *Austin* relied on "the evidence that Congress understood those provisions as serving to deter and punish" to support its conclusion that the §§ 881(a)(4) & (a)(7) did not serve *solely* remedial purposes. *Id.* —— U.S. at ——, 113 S.Ct. at 2812. In substantial part, this evidence consisted of the fact that "Congress has chosen to tie forfeiture directly to the commission of drug offenses." *Id.* —— U.S. at ——, 113 S.Ct. at 2811.

■ *Austin* thus makes clear that at least three principles are relevant to determining whether a forfeiture constitutes "punishment." First, because of "the historical understanding of forfeiture as punishment," *id.* —— U.S. at ——, 113 S.Ct. at 2812, there is a strong presumption that any forfeiture statute does not serve *solely* a remedial purpose. Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty conduct. Finally, where Congress has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law.

These principles dictate that forfeiture under the statutes at issue in this case constitutes "punishment." The historically-based presumption that forfeiture is punishment continues to apply. Moreover, the statutes on which the government relies in this case focus on "the culpability of the owner," *id.*, by providing an "innocent owner" defense. *See* 18 U.S.C. § 981(a)(2) ("No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner

or lienholder."); 21 U.S.C. § 881(a)(6) ("[N]o property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."). Finally, in drafting 21 U.S.C. § 881(a)(6) (directly tying forfeiture to "any violation of this subchapter") and 18 U.S.C. § 981(a)(1)(A) (directly tying forfeiture to violation of specific criminal statutes), "Congress has chosen to tie forfeiture directly" to the commission of specific offenses. *Austin,* —— U.S. at ——, 113 S.Ct. at 2811. Thus, applying the principles set forth in *Austin,* we must conclude that the statutes relied upon by the government in this case operate at least in part to punish and deter.

■ Moreover, as we mentioned, the government misrepresents the sweep of the forfeiture statutes it invokes in this case. Despite the government's argument, the statutes are *not* limited to the proceeds of illegal activity. The so-called narcotics proceeds forfeiture statute, 21 U.S.C. § 881(a)(6), applies to all money "furnished or *intended to be furnished* by any person in exchange for a controlled substance" as well as to any money which is "used or *intended to be used to facilitate* any violation of this subchapter." *Id.* (emphasis added). This statutory language is not limited to criminal proceeds— that is, money that *has been furnished* in exchange for drugs. Rather than rendering only the *profits* of drug dealers subject to forfeiture, the statute applies to nearly any money that is involved in a narcotics transaction in some fashion. In addition to narcotics proceeds, the statute renders forfeitable money that someone intends to use to purchase drugs, or even money that someone intends to use to purchase a car or boat in order to facilitate an illegal narcotics transaction.

■ The money laundering forfeiture statute, 18 U.S.C. § 981(a)(1)(A), is similarly broad. It applies to any property which is "involved in" an illegal money laundering transaction. The government took pains to argue before the district court that property "involved in" a money laundering offense in-

cludes more than the actual money that is laundered. *See* Government's Memorandum of Contentions of Fact and Law (CR 46), at 17–20. Indeed, the government relied on a case which expressly *rejected* any limitation of § 981(a)(1)(A) to criminal proceeds. *See United States v. Certain Funds on Deposit,* 769 F.Supp. 80, 84–85 (E.D.N.Y.1991) ("As the Government contends, limiting the forfeiture of funds under these circumstances to the proceeds of the initial fraudulent activity would effectively undermine the purpose of the forfeiture statute. Criminal activity such as money laundering largely depends upon the use of legitimate moneys to advance or facilitate the scheme."), *quoted in* Government's Memorandum of Contentions of Fact and Law at 19.[12]

As the Supreme Court did in *Austin,* we conclude that the forfeiture statutes at issue here do not serve *solely* a remedial purpose. Accordingly, "even assuming that [these statutes] serve *some* remedial purpose, the Government's argument must fail." *Id.* —— U.S. at ——, 113 S.Ct. at 2812 (emphasis added). The civil forfeiture the government seeks to impose constitutes "punishment." Because the government is attempting to exact this form of "punishment" in a separate proceeding from the claimants' criminal trials, this action is barred by the Double Jeopardy Clause.

### III.

 The Supreme Court's decision in *Austin* will doubtless have a significant effect on the government's manner of proceeding in many cases. Because in the case of statutes like those before us a criminal prosecution and a forfeiture action based on the same offense must now be brought in the same proceeding—that is, the same indictment—the government will often be forced to choose whether to include a criminal forfeiture count in the indictment (and thus forego the favorable burdens it would face in the civil forfeiture proceeding) or to pursue only the civil forfeiture action (and thus forego the oppor-

tunity to prosecute the claimants criminally). If, in such cases, the government wishes both to obtain forfeiture and to impose other forms of criminal punishment, it "will have to rely to a much greater extent on criminal forfeiture." Smith, *supra,* ¶ 12.10[2], at 12–131 to 12–132. It is entirely reasonable to put the government to this choice. After *Austin,* the law requires it.

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED with instructions to dismiss with prejudice.

REVERSED and REMANDED.

---

**12.** Because the government argued vigorously in the district court that § 981(a)(1)(A) is not limited to the proceeds of illegal activity, and it continues to rely on that statute in defending the district court's order of forfeiture, it cannot now claim that this case involves *only* the forfeiture of illegal *proceeds. See Russell v. Rolfs,* 893 F.2d 1033, 1037–39 (9th Cir.1990), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).