**UNITED STATES of America**

v.

**Friday OGBUEHI.**

**Crim.A.No. 93–247–04.**

United States District Court, E.D. Pennsylvania.

Aug. 23, 1995.

---

Timothy S. Susanin, Assistant U.S. Attorney, Philadelphia, PA, for U.S.

Friday Ogbuehi, pro se.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The question in this case is whether the Double Jeopardy Clause precludes sentencing a person whose property has been civilly forfeited to the government for promotion and concealment of drug proceeds.

Following a lengthy trial, a jury convicted Friday Ogbuehi of conspiring to distribute heroin, possessing heroin and aiding and abetting the possession of heroin with the intent to distribute it, and importing and aiding and abetting the importation of heroin. I denied defendant's post-trial motions and scheduled a date for sentencing. Defendant then filed a *pro se* motion to vacate his conviction and bar sentencing. Defendant argues that because some of his property has been forfeited to the government, he has already been punished for the heroin-related offenses and that sentencing him now for those offenses would violate the constitution-

al protection against double jeopardy. For the reasons stated below, I will deny defendant's motion and reschedule his postponed sentencing.

## I. FACTS

The facts regarding the evidence against Ogbuehi, the trial, and his conviction, are detailed in an opinion dated March 13, 1995, and need not be repeated here. Ogbuehi's instant motion is based on the forfeiture by the United States Customs Service of some of his property: a 1987 Volvo, a 1979 Oldsmobile station wagon, and various electronic and computer equipment from the Trans–Atlantic Network, a video business owned by defendant. Another automobile, a 1990 Nissan Maxima, was not forfeited to the government but rather, was released to the Chrysler Corporation, which held a lien on the car. At my request the government submitted documents detailing the forfeitures.

In May 1993, the Washington, D.C., district director of the United States Customs Service sent a seizure notice to defendant and his wife. In July 1993, the director notified defendant that the government had commenced proceedings for administrative forfeiture of the Nissan and that the defendant could contest forfeiture by posting a bond. Documents filed by the government show that the Customs Service instituted the forfeitures pursuant to 18 U.S.C. § 981 for promotion and concealment of narcotics pro-

ceeds. Ogbuehi posted no bond and did not contest the forfeiture, although he notes that his then-attorney, Peter Bowers, Esq., stated on a Customs Form JF that he sought judicial forfeiture proceedings. In September 1993, the Nissan was released to the Chrysler Corporation.

Also in May 1993, the Customs Service sent notice to defendant of the seizure of the Volvo, the Oldsmobile, and the business equipment.[1] The notice explained defendant's options for contesting the forfeitures. In August 1993, the Customs Service began administrative forfeiture proceedings for the Oldsmobile and the equipment; proceedings began in November 1993 for the Volvo. In neither instance did defendant post bond or contest the forfeitures in Washington, D.C., although another Form JF signed by Ogbuehi's then-attorney indicates that he sought judicial forfeiture proceedings for the Volvo.[2] In February 1994, the two vehicles and the business equipment were declared forfeit and either put to official use or sold.

## II. THE GOVERNMENT'S ACTIONS DID NOT VIOLATE THE DOUBLE JEOPARDY CLAUSE

■ The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for the same offense.[3] To assess whether the government's actions violate the Fifth Amendment by forfeiting defendant's

---

1. In a letter brief to the court dated August 4, 1995, defendant argues that notice was insufficient as to some of the property and that administrative forfeiture occurred prematurely. The forfeiture proceedings are not being contested here and did not occur in this district.

2. In December 1993, after he had been tried and convicted, Ogbuehi sent the court a motion for the return of his property. It was neither filed nor served until April 1994. No forfeiture proceedings had been instituted in this district, nor was I aware that they had been instituted at all. Not knowing what the defendant was contending, I took no action on his motion.

3. While a long line of cases parrots this proposition and seemingly embeds it in stone, the Double Jeopardy Clause only goes that far through judicial generosity. The Clause provides that no person shall be subject "for the same offence to be twice put in jeopardy of life or limb...." Justice Scalia argues that the Clause prohibits

multiple or successive prosecutions, not multiple or successive punishments. *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, ——, ——, 114 S.Ct. 1937, 1955, 1959, 128 L.Ed.2d 767 (1994) (Scalia, J., dissenting). I am satisfied there are many and good reasons why successive punishments should be precluded, and if Congress agrees, it should say so with appropriate legislation. To wring such a prohibition from the Fifth Amendment, however, creates problems of the type courts have wrestled with in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *United States v. Baird*, 63 F.3d 1213 (3d Cir.1995), and with which they will continue to grapple until somebody reads the Fifth Amendment instead of embellishing it. Moreover, I would read the Double Jeopardy Clause to mean what it says, and what it says is "life or limb," not "property." The Framers knew all about property and referred to it twice in this same Fifth Amendment.

property and then seeking to have sentence imposed following conviction, a court must consider two questions: (1) whether the civil forfeiture action and subsequent criminal prosecution constitute separate proceedings and (2) whether civil forfeiture under 18 U.S.C. § 981 constitutes punishment. *United-ed States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994). If the answer to both questions is yes, then the government's actions constitute successive attempts to impose punishment in violation of the Double Jeopardy Clause. *Id.* Because I hold, however, that the forfeitures were not punishment, sentencing Ogbuehi will constitute a first, not a second, imposition of punishment, and the Double Jeopardy Clause is not implicated.

### A. The Forfeitures and the Prosecution Were Separate Proceedings

The first consideration in determining whether the government's actions have violated the prohibition against double jeopardy is whether the forfeitures and the criminal trial were separate proceedings. The government contends that defendant's property was administratively forfeited, meaning defendant did not contest the forfeitures and did not become a party to any proceedings. Therefore, the government argues, there was no former proceeding against Ogbuehi and he was not punished by the administrative forfeiture.

■ The Court of Appeals for the Third Circuit addressed this issue recently, holding that an administrative forfeiture neither punished the defendant nor placed him in former jeopardy. *United States v. Baird,* 63 F.3d at 1214 (3d Cir.1995). Therefore, the court said, Baird's pending prosecution would not subject him to double jeopardy. *Id.* The court reasoned that administrative forfeiture is, in reality, a non-proceeding, and any abstract sense of punishment is "wholly unattached to a specific person and thus cannot

serve as the basis for a double jeopardy claim." *Id.* at 1218. *Baird* emphasized the distinction between administrative forfeiture, where, by definition, no judicial proceeding occurs, and civil forfeiture, where jeopardy attaches because a defendant contests the forfeiture, becomes a party to a judicial proceeding, and thereby places himself or herself "in jeopardy, or at risk, of a determination of 'guilt' and the concomitant imposition of 'punishment.'" *Id.* at 1218.

The problem with the government's argument in this instance is that, while the forfeitures of Ogbuehi's property were apparently carried out administratively, Ogbuehi did, in fact, attempt to contest the forfeitures and seek judicial forfeiture proceedings. Each of the government's three forfeiture files concerning Ogbuehi's property contains a "Form JF," on which a purported property owner can elect either to proceed administratively and thereby waive the right to have the matter immediately referred for institution of judicial forfeiture proceedings, or he may request immediate commencement of judicial forfeiture proceedings. In two of the three files, there is an "x" in the box choosing the latter option, and the form is signed by Peter Bowers, described as the attorney for Friday Ogbuehi.[4] (Gov't forf. file 93–5401–199, Declar. of Dennis A. McKenzie, ex. 8; Gov't forf. file 93–5401–201, Declar. of Dennis A. McKenzie, ex. 4).

It may be that defendant's requests for judicial forfeiture proceedings were imperfect requests, as there is no indication that the Form JFs were accompanied by a cost bond. Nonetheless, for purposes of the instant motion, I must accept that defendant attempted to invoke civil judicial forfeiture proceedings and that, had his attorney's request been heeded, judicial proceedings would have taken place. Therefore, the reasoning underlying the *Baird* opinion is inapplicable to this case, for if the civil forfeiture proceedings had occurred, Ogbuehi would

---

4. In a statement that perhaps highlights the perils to the government of not acting in a unified proceeding, Mr. McKenzie, a Customs Service Forfeiture Officer in Washington D.C., stated that the forms referred to above were "signed by an unreadable signature claiming to represent Friday Ogbuehi." Had this case gone forward in a

unified manner, the government agents working on the case in this district would have recognized Mr. Bowers' name or noticed that the form included a facsimile heading indicating that it had been faxed to a Philadelphia number which, I note, is the fax number for Mr. Bowers' office.

have been a party to a prior, separate proceeding. *$405,089.23 U.S. Currency*, 33 F.3d at 1218. That the would-be civil forfeiture proceeding and the subsequent trial would constitute separate proceedings, however, does not mean that Ogbuehi has been subject to double jeopardy. Rather, there must also be a determination that the civil forfeiture was punishment. *Id.* at 1216. *Baird* considered the double jeopardy question in terms of the proceedings and stated that "a double jeopardy claimant in the position of Baird, therefore, cannot prevail *merely* upon showing that he or she has been once punished for the same offense by the same sovereign.... [T]he claimant must also show that the initial punishment was meted out during the course of a prior proceeding." 63 F.3d at 1219. The corollary is also true, that a claimant cannot prevail merely because he has been subject to two proceedings. He must also show that he was at risk of punishment in the former proceeding before punishment in the second proceeding is barred.

B. The Forfeitures Were Not Punitive

■ The government forfeited defendant's property pursuant to 18 U.S.C. § 981, a civil forfeiture statute, for promotion and concealment of narcotics proceeds. The question posed by Ogbuehi's motion is whether this civil sanction is in fact a punishment. I hold that it is not for two reasons.

■ First, forfeiture of the proceeds of unlawful activity is not punishment because the purported owner has lost nothing to which he was ever lawfully entitled. *United States v. Tilley*, 18 F.3d 295, 297, 300 (5th Cir.1994). If a person has no legal right to engage in the activity which generated the ill-gotten gains, then requiring him or her to forfeit the unlawfully obtained gains cannot be understood as punishment. *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994); *United States v. Leaniz*, 1995 WL 143127 at *5 (S.D.Ohio Mar. 31, 1995). *But see Baird*, 63 F.3d at 1217 (court does not adopt a position on the matter, but understands how a court might conclude that civil forfeiture of drug proceeds under 21 U.S.C.

§ 881(a)(6) is punishment); *$405,089.23 U.S. Currency*, 33 F.3d at 1222 (civil forfeiture of drug proceeds under 21 U.S.C. § 881(a)(6) is punishment).

■ Second, under the analysis specified by the Supreme Court in *United States v. Halper*, the forfeitures were wholly remedial. As the Supreme Court noted in *Halper*, the labels "criminal" and "civil" are not particularly important in assessing whether a sanction is actually a punishment. 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). Rather, the Court said, determining whether a civil sanction is actually punitive requires a "particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901.

■ Punishment serves the dual goals of retribution and deterrence. Non-punitive penalties, however, have a remedial goal such as making the government whole. *Id.* at 449, 109 S.Ct. at 1902. Compensating society—in addition to government—is also a remedial goal served by a civil sanction. *Tilley*, 18 F.3d at 298. Therefore, a civil sanction that goes beyond a remedial purpose and can only be explained as also serving a retributive or deterrent purpose, is punishment. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901. The *Halper* Court announced the "rule of reason" a district court should use in determining the size of a civil sanction which the government may receive without crossing from remedy to punishment: where the civil penalty bears no rational relation to the goal of compensating the government for its loss, then the penalty is punitive.[5] *Id.* at 449, 109 S.Ct. at 1902. If the penalty merely reimburses the government or society for the costs arising from a defendant's criminal conduct, the penalty is remedial in character. *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994); *Tilley*, 18 F.3d at 298.

Ogbuehi argues that *Austin v. United States* compels the "inescapable" conclusion that forfeiture of his property was punish-

---

5. In *Halper*, the defendant had made false claims on the government totaling $585.00. The government sought a civil penalty of $130,000, which the lower court had found to be sufficiently disproportionate to the government's loss so as to constitute a second punishment.

ment under the Double Jeopardy Clause and sentencing is therefore barred. —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). *Austin* concerned the issue of whether the Eighth Amendment's Excessive Fines Clause applied to property forfeited pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7). *Id.* at ——, 113 S.Ct. at 2803. Citing its earlier decision in *Halper,* the Court noted that the Double Jeopardy Clause did not apply in civil forfeiture proceedings where the forfeiture could properly be characterized as remedial. *Austin,* at ——–—— n. 4, 113 S.Ct. at 2804–05 n. 4. The Court concluded that §§ 881(a)(4) and (a)(7), which apply to forfeitures of conveyances and real estate, respectively, did not serve solely a remedial purpose, and so were punitive in nature and limited by the Eighth Amendment.[6] *Id.* at ——, 113 S.Ct. at 2812.

 I find, however, that *Austin* does not compel the result for which defendant argues. *Austin* concerned conveyances and real estate used to facilitate a drug-related crime, forfeited under 21 U.S.C. § 881. —— U.S. at ——, ——, 113 S.Ct. at 2803, 2811 (defendant met customer at defendant's body shop, agreed to sell him cocaine, and went to defendant's mobile home to pick up the drugs). Ogbuehi's property, on the other hand, was forfeited pursuant to 18 U.S.C. § 981, which addresses concealment of the proceeds of unlawful activity. Simply, *Austin's* determination that civil forfeitures pursuant to 21 U.S.C. § 881(a)(4) and (a)(7) are punishments does not answer the question posed here because I do not read *Austin* so broadly as to say that *all* civil forfeitures of *any* kind of property under *any* statute are punitive. Instead, it is the *Halper* analysis that guides my inquiry.

6. The Third Circuit in *Baird* concluded that although *Austin* addressed punishment within the context of the Excessive Fines Clause of the Eighth Amendment, it also applied with regard to forfeiture cases to the Double Jeopardy Clause of the Fifth Amendment. 63 F.3d at 1221.

7. Ogbuehi claims that the Nissan was worth $19,223; the Volvo, $9,000; the Oldsmobile, $3,000; and the business equipment, $65,000. The only documents he submitted in support of these amounts are exhibits referring to Chrysler's costs in obtaining the Maxima from the govern-

 Under *Halper,* a civil sanction is punitive for purposes of double jeopardy if it does not serve solely a remedial purpose, but instead also serves a punitive or deterrent purpose. A court is instructed to consider whether the amount of the forfeited property bears a rational relation to the costs of government and society resulting from a defendant's unlawful activity. If so, the sanction is remedial and the Double Jeopardy Clause is inapplicable. If not, the sanction can fairly be said to serve the purpose of either deterrence or retribution, and thus is punitive.

 The government asserts that the value of the property forfeited by Ogbuehi was about $37,500. Documents in the forfeiture files list the appraised value of the Volvo as $5,000; the Nissan, $10,000; the Oldsmobile, $500; and the business equipment, $22,000. Ogbuehi disputes this valuation, claiming that the property was worth $96,000.[7] In any event, even if I accept defendant's estimate of the value of the forfeited proceeds, I find that the amount forfeited is rationally related to the costs to government and society that resulted from defendant's unlawful activity.

A jury convicted Ogbuehi of one count of conspiring to distribute heroin, four counts of possessing heroin with the intent to distribute it, and one count of importing heroin. There was considerable testimony at trial about Ogbuehi's role in distributing heroin brought into the country by several couriers and shipped into the country in packages of dried fish. At a minimum, Ogbuehi was responsible for distributing 1.66 kilograms of heroin: 360 grams in one transaction (count 4), 400 grams in another transaction (count 9), and 900 grams in a third transaction (counts 10 and 11).[8] The costs to the govern-

ment. The exhibits do not contain estimates of the then-current value of the car.

8. I use these amounts as a minimum, although there was trial testimony about Ogbuehi's distribution of drugs in other transactions as well: 400 grams of cocaine, thought to be heroin when first brought into the country (count 7), 200 grams of heroin in an uncharged transaction in March 1991, and 450 grams of heroin in another uncharged transaction in December 1991. Use of the minimum amount which Ogbuehi distributed merely shows that the forfeitures were rationally related to the government's and society's

ment and society of this amount of drugs is considerable. Expert testimony at defendant's trial established that the wholesale value of one kilogram of heroin is $180,000—$200,000. (Transcript, Nov. 1, 1993, p. 47). The street, or retail, value of one kilogram of heroin at the time of the conspiracy in question was $1.6 million. (*Id.* at 48–49). Forfeiture of $96,000 of Ogbuehi's property—the concealed proceeds of his unlawful activity—reimburses the government for the costs of detecting, interdicting, investigating, and prosecuting his criminal activity. Moreover, it serves to reimburse society for the costs of combatting the allure of the unlawful activity, lost productivity, and the drain on legitimate commerce that defendant's participation in the underground economy has wrought. I find that forfeiture of property worth $96,000 is rationally related to the goal of compensating the government and society for the losses suffered as a result of Ogbuehi's illegal acts. The forfeitures, therefore, were remedial, not punitive.

## III. CONCLUSION

Because forfeiture of Ogbuehi's property was remedial, not punitive, the would-be civil forfeiture proceeding did not punish Ogbuehi. Therefore, sentencing Ogbuehi will constitute a first, not a second, imposition of punishment, and the Double Jeopardy Clause is not implicated. Defendant's motion to vacate his conviction and bar sentencing must therefore be denied.

An appropriate order follows.

### ORDER

AND NOW, this 23rd day of August, 1995, defendant's *pro se* motion to vacate conviction and bar sentencing (document # 463) is hereby DENIED. Defendant shall appear for sentencing in courtroom 6A on Monday, September 11, 1995, at 2:00 p.m.

losses. It is not to be taken as a comment on his guilt in the other count of which he was convicted (count 7), or on the total amount of drugs for which he was responsible.