## PennDOT v. Krall

*Lee C. Silverman,* for PennDOT.
*Martin J. King,* for defendant.

RUFE, J., *J.*, October 26, 1995—This opinion is written in response to an appeal by defendant, Dennis G. Krall, from our order dated August 8, 1995 whereby we denied defendant's de novo appeal and ordered the Department of Transportation to reinstate the suspension of defendant's operating privileges.

On June 27, 1994, Dennis Krall was arrested for driving under the influence of alcohol, DUI. On February 13, 1995, he pleaded guilty to violating section 3731 of the Vehicle Code and was sentenced to 48 hours incarceration, a fine and costs. Subsequently, on March 23, 1995, defendant received a notice of suspension from the Pennsylvania Department of Transportation informing him that pursuant to section 1532(b) of the Motor Vehicle Code, his license was suspended for one year. Pa.C.S. §1532(b).

Defendant timely appealed from the suspension of his operating privileges. A hearing on this issue was held before the undersigned on July 5, 1995. Defendant maintained that the suspension of his license was prohibited by the double jeopardy clauses of the Fifth Amendment to the Constitution of the United States, and/or Article 1, Section 10 of the Constitution of the Commonwealth of Pennsylvania. The matter was taken under advisement and, after a review of relevant case law and the briefs supplied by counsel, we denied defendant's appeal. It is from this decision that defendant now appeals.

The protection embodied in the double jeopardy clause of the Fifth Amendment[1] is that "it affords against successive prosecutions—that is, against efforts to impose punishment for the same offense in two or more separate proceedings." *U.S. v. $405,089.23 U.S. Cur-*

---

1. The Pennsylvania Supreme Court has held that the double jeopardy clause of the Pennsylvania Constitution provides no greater protection than does the double jeopardy clause of the Fifth Amendment. Hence, the same rationale will be applied. *Commonwealth v. Tabb,* 491 Pa. 372, 421 A.2d 183 (1980), *cert. denied,* 405 U.S. 1000 (1980).

*rency,* 33 F.3d 1210, 1215 (1994). Herein, defendant contends that the suspension of his operating privileges clearly violates this protection since it was imposed in a civil proceeding, separate and distinct from the criminal proceeding, and that it constitutes an additional "sanction" for the same offense for which he had already been punished. Our review of the pertinent case law indicates that defendant's argument is inexact.

Traditionally, a designation that a certain sanction was a "civil sanction" predisposed it to be remedial and not punative in nature. Accordingly, the double jeopardy clause would not apply. *Id.* at 1218. See also, *United States v. Ward,* 448 U.S. 242 (1980). However, the court in *United States v. Halper,* 490 U.S. 435 (1989) determined that labels such as "criminal" or "civil" are not the most critical factor in determining whether a particular sanction is a punishment for double jeopardy purposes, stating:

"The notion of punishment, as we understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the double jeopardy clause, we must follow the notion where it leads. *Id.* at 447-48, 109 S.Ct. at 1901." *$405,089.23 U.S. Currency,* 33 F.3d at 1218.

Consequently, a sanction which is considered remedial will still be considered a "punishment" for double jeopardy clause purposes if any part of its application is designed to punish or deter. *Id.* at 1219; see also, *Austin v. United States,* 113 S.Ct. 2801 (1993). Based upon the rationale proffered in these cases, defendant believes that the suspension of his operating privileges

is punitive and not solely remedial in nature, and therefore constitutes a second punishment for his driving under the influence conviction. We disagree.

First, defendant points to the use of the word "sanction" in the March 23, 1995 notice of suspension he received from the Department of Transportation as manifesting the punitive nature of the suspension. The notice specifically states, "In order to comply with this sanction you are required to return any current driver's license. . . ." (Notice of suspension, March 23, 1995, exhibit "1".) Such an argument flies in the face of the rationale previously relied upon by the defendant. Just as the Supreme Court determined that the use of the label "civil" or "criminal" to describe a penalty does not automatically render it remedial or punitive respectively, nor does the use of the word "sanction" by the Department of Transportation automatically qualify the suspension as a punishment. The impetus for adopting a new test for determining whether a civil sanction constituted "punishment" was the notion that simple adjectives do not properly convey the scope of the provision involved. *Id.* A sanction can be punitive or it can be remedial. Consequently, this court did not accept that by simply using the word sanction in its notice of suspension the department conceded that the operating suspension was punitive.

To the contrary, the law has traditionally held the purpose of suspending operating privileges to be strictly remedial. As stated by the Pennsylvania Commonwealth Court in *Zanotto v. PennDOT,* 83 Pa. Commw. 69, 71, 475 A.2d 1375, 1376 (1984), and in numerous other cases, "[d]river suspension and revocation proceedings are remedial sanctions, which are civil in nature, de-

signed to protect the public from unsafe drivers; as such, they cannot be grounds for a double jeopardy challenge." See also, *Callan v. Bureau of Traffic Safety,* 19 Pa. Commw. 635, 637-38, 339 A.2d 163, 164-65 (1975); *Commonwealth v. Abraham,* 7 Pa. Commw. 535, 536-37, 300 A.2d 831, 832 (1973); *In re: Friedman Appeal,* 72 Pa. Commw. 274, 281 n.10, 457 A.2d 983, 987 n.10 (1983). The public is entitled to have protection from drivers who have demonstrated unsafe driving behavior. See *Forte v. PennDOT,* 94 Pa. Commw. 194, 503 A.2d 107 (1986). Therefore, there exists a strong presumption in the law that any statute suspending driving privileges serves solely a remedial purpose.[2] Absent overwhelming evidence to the contrary, we will not override that presumption.

Additionally defendant suggests that the legislature did not intend a license suspension to be remedial because it did not include suspensions within the remedial provision of section 1538 requiring driver education. However, such an argument ignores the courts' specific interpretation of legislative intent, which determined that a license suspension is in fact a purely remedial provision. Furthermore, section 1538 of the Motor Vehicle Code does not pertain specifically to drunk driving

---

2. The cases, cited by defendant pertain to whether a civil forfeiture constitutes a punishment. One factor which was given particular weight was the historical understanding of forfeiture as a punishment. The court determined that there was a strong presumption that any forfeiture statute does not serve solely a remedial purpose. *$405,089.23 U.S. Currency,* 33 F.3d at 1221. In light of the importance placed upon the history of a particular sanction as being punitive or remedial, this court placed significant emphasis on the fact that a suspension of operating privileges has been consistently treated as a remedial measure by the courts.

6

convictions, but rather pertains to persons accumulating significant points for various motor vehicle violations. 75 Pa.C.S. §1538. Defendant fails to acknowledge the legislative purpose behind the suspension of operating privileges specifically for a DUI conviction, namely, protecting the public from people who have proven themselves to be a threat to others on the highway by driving under the influence.

Finally, defendant insists that the suspension of his driving privileges constitutes a deprivation of property rights because it results in the loss of his livelihood, thereby bringing the suspension within the purview of the double jeopardy clause. Defendant believes that the legislature acknowledged this property right by adopting occupational limited licenses. By specifically excluding drivers convicted of driving under the influence from obtaining such occupational licenses, defendant maintains that the legislature intended to punish such persons.

It is well-established that operating a motor vehicle upon the roadways in this country is not a right but a privilege. See for example, 75 Pa.C.S. §102. It is the government's responsibility to regulate and control the extent of that privilege. A review of section 1553 relating to occupational limited licenses shows that there are actually 16 categories of people who would not be able to obtain an occupational license, including inter alia: persons convicted of racing on highways (section 3367); persons convicted of meeting or overtaking a school bus (section 3345(a)); and persons whose license has been suspended for refusing to submit to chemical testing to determine the amount of alcohol or controlled substance. 75 Pa.C.S. §1553. The fact

that the legislature excluded persons convicted of all types of unsafe driving behavior from qualifying for an occupational limited license serves to bolster the remedial nature of a suspension of operating privileges.

We do not doubt that the one year suspension may result in some economic hardship to defendant. However, as noted by the United States Supreme Court in *Halper,* "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'" *Halper,* 490 U.S. at 447 n.7; *Department of Revenue of Montana v. Kurth Ranch,* 114 S.Ct. at 1937, 128 L.Ed. at 777 n.14 (1994). Therefore, even though Mr. Krall sees the suspension as strictly a punishment and a deprivation of his rights, the legislature deemed the suspension as an effective means of protecting the public.

For all the foregoing reasons, we denied defendant's appeal and reinstated the suspension of his operating privileges.