

1995 Decisions

8-11-1995

# United States v Baird

Precedential or Non-Precedential:

Docket 95-1202

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Baird" (1995). *1995 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-1202
_____


UNITED STATES OF AMERICA


vs.

FRANK L. BAIRD,

                    Appellant.



_____



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 94-cr-00215)

_____



ARGUED MAY 18, 1995

BEFORE:  COWEN, LEWIS and SAROKIN, Circuit Judges.

(Filed  August 11, 1995)

_____


Richard S. Wasserbly (ARGUED)
100 East Court Street
Doylestown, PA  18901

Stuart M. Wilder (ARGUED)
Pratt, Brett, Thome & Lyons
69 East Court Street
Doylestown, PA  18901

        Attorneys for Appellant

1

Walter S. Batty, Jr. (ARGUED)
Sonia C. Jaipaul (ARGUED)
Joseph T. Labrum, III
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106

_____ Attorneys for Appellee_

_____

OPINION OF THE COURT
_____


LEWIS, <u>Circuit</u> <u>Judge</u>.

In this appeal, the appellant, Frank L. Baird ("Baird"), seeks dismissal on double jeopardy grounds of a superseding indictment charging him with violations of federal criminal law.  He argues that as a result of a prior administrative forfeiture of monies seized from his residence, he has already been once "punished" for the offenses alleged in the indictment.  A subsequent criminal prosecution would, he argues, run afoul of the Double Jeopardy Clause.

To assess the merits of Baird's unusual double jeopardy argument, we must determine whether Baird was "punished" as a result of the administrative forfeiture of money seized from his residence.  We conclude that Baird was not "punished" by the administrative forfeiture of seized money never determined to be his.  Moreover, assuming, <u>arguendo</u>, that the forfeited money belonged to Baird, we further conclude that the administrative

2

forfeiture did not place Baird in a former jeopardy. Therefore, the pending prosecution of Baird for the offenses alleged in the superseding indictment will not subject Baird to double jeopardy. For these reasons, we will affirm the district court's denial of Baird's motion to dismiss.

## I. Facts and Procedural History

In April of 1994, law enforcement officials conducted a search of Frank Baird's residence on the suspicion that he was manufacturing and selling 3,4 methylenedioxy-methamphetamine ("Ecstacy"). The search of Baird's residence turned up an elaborate clandestine Ecstacy-manufacturing operation, complete with precursor chemicals, extensive laboratory apparatus, coded formulas for the manufacture of the drug, and stock piles of already manufactured Ecstacy. In addition, $2,582 in United States currency was found in the bedroom area of Baird's residence. This money was seized by law enforcement officials.

In a superseding indictment returned in August of 1994, Baird was charged with various drug and drug-related violations of federal criminal law.[0] Prior to the returning of this

---

[0] Baird was charged in Count 1 with conspiracy to manufacture and distribute Ecstacy; in Count 2, with the manufacture of approximately 20 kilograms of Ecstacy; in Count 3, with possessing approximately 32 kilograms of Ecstacy with the intent to distribute it within 1000 feet of the Baldwin School located in Bryn Mawr, Pennsylvania; in Count 4, with possessing approximately 32 kilograms of Ecstacy with the intent to distribute it; in Count 5, with attempt to manufacture Ecstacy; in Count 6, with attempt to manufacture amphetamine; in Count 7, with creating a substantial risk of harm to human life while manufacturing and attempting to manufacture Ecstacy; in Count 8, with maintaining a place for the purpose of manufacturing Ecstacy; and in Count 9, with carrying a firearm during and in relation to a drug trafficking crime for which Baird could be

3

indictment against him, however, the Drug Enforcement Administration ("DEA") carried out the administrative forfeiture of the $2,582 seized from Baird's residence.

In February of 1995, Baird filed a pre-trial motion to dismiss the superseding indictment on double jeopardy grounds. The district court denied Baird's motion, finding under United States v. Torres, 28 F.3d 1463 (7th Cir. 1994), and United States v. Tilley, 18 F.3d 295 (5th Cir. 1994), that initial jeopardy did not attach as a result of the administrative forfeiture of the seized money. This interlocutory appeal followed. We have stayed Baird's trial pending resolution of his appeal.

## II.  Jurisdiction and Standard of Review

Subject matter jurisdiction of the district court is based upon 18 U.S.C. § 3231.[0] We have jurisdiction over Baird's appeal under 28 U.S.C. § 1291[0] and the collateral order doctrine announced in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949).  See Witte v. United States, ___ U.S. ___, 115 S. Ct. 2199 (1995) (holding that a multiple punishments double jeopardy

---

prosecuted in a Court of the United States, that is, possession of Ecstacy with the intent to distribute it, as charged in Count 4.

[0]      18 U.S.C. § 3231 provides:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

[0]      28 U.S.C. § 1291 provides:

> The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court.

4

claim is ripe for appellate review even where the claimant has yet to have been a second time convicted).[0]  Our review of the double jeopardy issue in this case is plenary.  See Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 766 (3d Cir. 1994) (legal questions are subject to plenary appellate review).

### III.  Double Jeopardy Analysis

The Double Jeopardy Clause of the Fifth Amendment[0] has been said to protect against three distinct abuses:  a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.  See, e.g., North Carolina v. Pearce, 395 U.S. 711, 717 (1969); Schiro v. Farley, 114 S. Ct. 783, 789 (1994).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  Schiro, 114 S. Ct. at 789.  According to the parties, it is the third of these abuses -- multiple punishments for the same offense -- which is of concern in this appeal.

The Supreme Court has stated that "the primary evil to be guarded against [by the Double Jeopardy Clause] is successive

---

[0]     The government has filed a motion to dismiss Baird's appeal in which it argues that the right Baird asserts -- the right not to be punished twice for the same offense -- can be fully vindicated on appeal at the conclusion of Baird's trial, and that we therefore lack jurisdiction under the collateral order doctrine to hear Baird's appeal.  In light of the recently decided Witte v. United States, this argument is clearly untenable.  We will, therefore, deny the government's motion to dismiss.

[0]     The Double Jeopardy Clause provides:  "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."  U.S. Const. Amdt. 5.

prosecutions: `[T]he prohibition against multiple trials is the controlling constitutional principle.'" Id. (citations omitted). Nevertheless, the prohibition against multiple punishments for the same offense has "deep roots in our history and our jurisprudence." United States v. Halper, 490 U.S. 435, 440 (1989).

> As early as 1641, the Colony of Massachusetts in its "Body of Liberties" stated: "No man shall be twise sentenced by Civill Justice for one and the same Crime, offence, or Trespasse." In drafting his initial version of what came to be our Double Jeopardy Clause, James Madison focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." In our case law too, this Court, over a century ago, observed: "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." Ex parte Lange, 18 Wall 163, 168, 21 L.Ed. 872 (1874).

Id. (some citations omitted).

In two recent unanimous decisions, the Supreme Court gave the "no multiple punishments" rule a "breadth of effect it had never before enjoyed." See Montana Dept. of Rev. v. Kurth Ranch, 114 S. Ct. 1937, 1957 (1994) (Scalia, J., dissenting). In the first of these, United States v. Halper, 490 U.S. 435 (1989), the Court for the first time announced that civil penalties may, in certain instances, constitute "punishment" for double jeopardy purposes. Halper, 490 U.S. at 448. In the second, Austin v. United States, 113 S. Ct. 2801 (1993), the Court relied upon Halper to conclude that civil forfeitures undertaken pursuant to

6

21 U.S.C. §§ 881(a)(4) and (a)(7)[0] constitute "punishment" for purposes of Eighth Amendment Excessive Fines Clause[0] analysis. Austin, 113 S. Ct. at 2812. While Austin addressed the meaning of "punishment" in a different context, we agree with the Court of Appeals for the Ninth Circuit: the "only fair reading of the Court's decision in Austin is that it resolves the `punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause." United States v. $405,089.23 United States Currency, 33 F.3d 1210, 1219 (9th Cir. 1994), opinion amended on denial of rehearing, ___ F.3d ____, 1995 WL 321826 (9th Cir. 1995); see also David Smith Prosecution and Defense of Forfeiture Cases ¶ 12.10[2], at 12–131

---

[0] These statutes provide for the forfeiture of:

> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution]
>
> . . . .
>
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment . . . .

21 U.S.C. §§ 881(a)(4), (7).

[0] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amdt. 8.

7

("The Supreme Court's decision in Austin v. United States, makes it clear that Halper's double jeopardy protections do apply to the vast majority of civil forfeiture cases.").

According to Baird, together, Halper and Austin establish that the administrative forfeiture of money under 21 U.S.C. § 881(a)(6)[0] constitutes "punishment" for purposes of double jeopardy analysis.  We do not think Halper and Austin go so far.  While these precedents do suggest that the civil forfeiture of money under 21 U.S.C. § 881(a)(6) is "punishment" precluding the meting out of additional punishment for the "same offence" by the "same sovereign" in a subsequent proceeding, see $405,089.23 United States Currency, 33 F.3d at 1222 (holding that civil forfeitures of drug proceeds under 21 U.S.C. § 881(a)(6) constitute "punishment" under Halper and Austin); but see Tilley, 18 F.3d at 300 (holding that civil forfeitures of drug proceeds do not constitute "punishment" for double jeopardy purposes), Halper and Austin do not suggest, let alone establish, that administrative forfeiture under 881(a)(6) amounts to "punishment" relevant to the double jeopardy inquiry.  To understand the critical distinction we are drawing between civil and

_____

[0]     21 U.S.C. § 881(a)(6) provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . .

8

administrative forfeiture, a brief discussion of the nature and process of administrative forfeiture is in order.

The purpose of administrative forfeiture is "to save the government the time and expense of [a] judicial [forfeiture] proceeding in cases where the value of the seized property [is] small."  United States v. United States Currency Etc., 754 F.2d 208, 211 (7th Cir. 1985).[0]  In keeping with this purpose, Federal civil forfeiture statutes allow certain statutorily defined categories of property to be forfeited administratively, i.e., without the filing of a civil forfeiture action in federal district court.  See David Smith Prosecution and Defense of Forfeiture Cases ¶ 6.01, at 6-1.

The administrative forfeiture procedure begins with the seizing agency, in this case the DEA, publishing a notice of seizure and intent to forfeit once a week for at least three successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred.  19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75.  The agency is also statutorily required to give personal written notice of the seizure and information on the applicable procedure to any party who appears to have an interest in the seized property.  19 U.S.C. § 1607(a).  A person may contest an administrative forfeiture, at any time within twenty days of the first publication of the notice of seizure, by filing a claim "stating his [or her] interest

---

[0]     Under 19 U.S.C. § 1607(a), administrative forfeiture may be undertaken to effect the forfeiture of as much as $500,000 in United States currency.

9

therein," and posting a cost bond of $5,000 or ten percent of the value of the property, whichever is less, but not less than $250. 19 U.S.C. § 1608. The proper and timely filing of a claim and cost bond has the effect of stopping the administrative forfeiture process, and forcing the seizing agency to refer the matter to the United States Attorney for the district where the property was seized for the institution of judicial forfeiture proceedings in the ordinary mode prescribed by law. 19 U.S.C. §§ 1603(b) and 1608; 21 C.F.R. § 1316.76(b). Where no person files a claim to the seized property within the statutory period, the agency is authorized to declare the property forfeited. 19 U.S.C. § 1609(b); 21 C.F.R. § 1316.77.

In sum, administrative forfeiture is a procedure available to the government "only if the value of the property seized is less than the jurisdictional amount and if no claim to the property is filed within the twenty days after the date of first publication of the notice of seizure." United States Currency Etc., 754 F.2d at 212 (emphasis in the original). Significantly for our purposes, administrative forfeiture is only appropriate in cases where the seized property in question goes unclaimed. Without overstating it, administrative forfeiture is, in reality, a non-proceeding -- it is merely the consequence of no one having come forward to claim the property seized or contest its forfeitability. With this introduction to administrative forfeiture in mind, we turn now to determine the merits of Baird's double jeopardy claim.

10

Without adopting a position on the matter, we can certainly understand how a court might conclude that <u>civil</u> forfeiture under 21 U.S.C. § 881(a)(6) of drug proceeds constitutes "punishment" for double jeopardy purposes. <u>See</u> <u>$405,089.23 United States Currency</u>, 33 F.3d at 1218-22. However, we cannot fathom how an <u>administrative</u> forfeiture, under section 881(a)(6), of <u>unclaimed</u> alleged drug proceeds could possibly be held to constitute "punishment" in relation to an individual's double jeopardy claim. Any "punishment" resulting from the administrative forfeiture of suspected drug proceeds is punishment only in the abstract, wholly unattached to any specific person, and thus cannot serve as the basis for a double jeopardy claim. This is because administrative forfeiture does not, and, by its very definition, cannot, entail a determination of ownership of the property to be forfeited. All property administratively forfeited is, as a matter of law, "ownerless" property, and the taking of ownerless property "punishes" no one. Because Baird never asserted an interest in the money that was seized from his residence, he cannot now claim to have been punished by its forfeiture.

Even were we to assume, <u>arguendo</u>, that Baird was the owner of the seized and forfeited money, we would nonetheless affirm the district court's denial of Baird's motion to dismiss because we do not agree that administrative forfeitures place in jeopardy the person whose property is so forfeited.

Succinctly stated, "[y]ou can't have double jeopardy without a former jeopardy[;]" that is, to prevail on a double

11

jeopardy claim, former jeopardy must be shown to have attached. United States v. Torres, 28 F.3d 1463 (7th Cir. 1994) (citing Serfass v. United States, 420 U.S. 377, 389 (1975). In essence, Baird asks us to find that he was placed in jeopardy by the non-judicial administrative forfeiture process undertaken in this case. In rejecting this argument, we are compelled to explain what it means to be placed "in jeopardy."

The Double Jeopardy Clause was "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187 (1957).

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty.

Id. at 187-88. As an aid to the resolution of double jeopardy claims, "courts have found it useful to define a point in criminal [and, post-Halper, civil] proceedings at which the constitutional purposes and policies [behind the Double Jeopardy Clause] are implicated by resort to the concept of `attachment of jeopardy.'" Serfass, 420 U.S. at 388. In the case of a jury trial, for example, jeopardy is understood as attaching when the jury is empaneled and sworn. Id. In the case of a non-jury

12

trial, jeopardy has been said to attach when the court begins to hear evidence.  <u>Id</u>.  In any event, the Court has "consistently adhered to the view that jeopardy does not attach, <u>and the constitutional [double jeopardy] prohibition can have no application</u>, until a defendant is `put to trial before the trier of facts, whether the trier be a jury or a judge.'"  <u>Serfass</u>, 420 U.S. at 388 (emphasis supplied).

> Both the history of the Double Jeopardy
> Clause and its terms demonstrate that it does
> not come into play until a proceeding begins
> before a trier "having jurisdiction to try
> the question of the guilt or innocence of the
> accused."  Without risk of a determination of
> guilt, jeopardy does not attach, and neither
> an appeal nor further prosecution constitutes
> double jeopardy.

<u>Id</u>. (citations omitted).  It should be clear from this description of the "attachment" concept that jeopardy does not, and cannot, attach until one is made a <u>party</u> to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence, and that, until such time, the constitutional double jeopardy prohibition can have no application.[0]

---

[0]In <u>Halper</u> and <u>Austin</u>, and, for that matter, in <u>Montana Dept. of Rev. v. Kurth Ranch</u>, 114 S. Ct. 1937 (1994), the Court did not discuss the attachment threshold issue.  We do not take the Court's failure to discuss "attachment" in these cases to signify that it has intended, by implication, to do away with the venerable "attachment" threshold requirement.  In each of these three cases, it was clear that the double jeopardy claimant or claimants suffered "punishment" only after having first been made a party to a proceeding before a trier of fact with jurisdiction to decide "innocence" or "guilt."  Thus, the "attachment" threshold was, in each of these cases, clearly enough satisfied that no discussion of it was required.

13

Because Baird failed to contest the forfeiture, he never became a party to any judicial proceeding, criminal or civil.  In fact, no judicial proceeding occurred prior to the forfeiture of the money -- such being the very nature of administrative forfeiture.  Baird has therefore yet to have been placed in jeopardy, or at risk, of a determination of "guilt" and the concomitant imposition of "punishment."  Like the double jeopardy claimant in Torres, as a non-party to the administrative forfeiture process, Baird was not, and could not have been, placed at risk by that process.  And without having been placed at risk of a determination of guilt, jeopardy did not attach as a consequence of the administrative forfeiture.  Thus, "neither an appeal nor further prosecution [of Baird would] constitute[] double jeopardy."  Torres, 28 F.3d at 1465 (quoting Serfass, 420 U.S. at 389).

By asking us to find a double jeopardy violation in his case, Baird is asking, essentially, that we give to the "no multiple punishments" rule a breadth of effect greater even than that given to it by Halper, Austin and Kurth Ranch.  Baird would have us conclude that multiple punishments, per se, violate the Double Jeopardy Clause.  Even under the above precedents, this just isn't so.  Prior to Halper, the "no multiple punishments" rule was of rather limited effect -- merely proscribing the imposition of those cumulative punishments, for example, fine and incarceration, not authorized by the legislature.  See Halper, 490 U.S. at 451 n.10.  As noted above, Halper extended the no-double-punishments rule to civil penalties.  Halper also

14

"affirm[ed] that [the no multiple punishments rule] demand[s] more than mere fidelity to legislative intent . . . ." Kurth Ranch, 114 S. Ct. at 1957 (Scalia, J., dissenting). Significantly, however, Halper did not remove from the double jeopardy claimant's shoulders the burden of establishing a former jeopardy. A post-Halper double jeopardy claimant in the position of Baird, therefore, cannot prevail merely upon a showing that he or she has been once punished for the same offense by the same sovereign. Rather, the post-Halper double jeopardy claimant must also show that the initial punishment was meted out during the course of a prior proceeding having the "functional equivalen[ce] of a [prior] criminal prosecution that placed the [claimant] in jeopardy . . . `for the same offence.'" Kurth Ranch, 114 S. Ct. at 1948. In other words, to prevail on his post-Halper double jeopardy claim, Baird would have to establish a former jeopardy.[0] Because of the very manner in which the seized property was forfeited, this he was unable to do.

---

[0]The dissent argues that participation in a forfeiture proceeding should not be a precondition to a double jeopardy claim. This argument does away with the multiple jeopardy requirement and is, therefore, contrary to Supreme Court precedent, see Serfass, 420 U.S. 377 (1975), not to mention the language of the Double Jeopardy Clause itself. We are also troubled by the suggestion, implicit in the dissent, that one can be "punished" in a manner relevant to the Double Jeopardy Clause without having been subjected to any judicial process whatsoever. "Unless the whole doctrine of our system of jurisprudence, both the Constitution and the common law, for the protection of personal rights . . . [is] a nullity," Ex Parte Lange, 85 U.S. 163, 176 (1874), no one may be "punished" in a manner relevant to the Double Jeopardy Clause without first having been subjected to some form of judicial procedure, either in the form of a criminal prosecution or the "functional equivalent" thereof.

## IV.  Conclusion

Having concluded that we have jurisdiction to hear this appeal, and having further concluded that Frank Baird was not punished as a result of the administrative forfeiture of the money seized from his residence, and that a former jeopardy did not attach as a result of the administrative forfeiture of money assumed for the sake of argument to have been Baird's property, we will deny the government's motion to dismiss this appeal, and affirm the district court's denial of Baird's motion to dismiss the superseding indictment on double jeopardy grounds.

_____

United States v. Frank L. Baird, No. 95-1202.


SAROKIN, Circuit Judge, dissenting.

I agree with the majority that this court has jurisdiction over defendant's appeal.
op. at __ [Typescript at 4-5]. Accordingly, I too would deny the United States's mo
dismiss the appeal for lack of jurisdiction.  On the merits, I conclude that forfei
pursuant to 21 U.S.C.A. § 881(a)(6) may constitute punishment for purposes of the D
Jeopardy Clause. I respectfully dissent because I believe that double jeopardy can
following a forfeiture, even where defendant has not participated in the forfeiture
proceeding, if the defendant can establish that he was the owner of the forfeited p
and that such forfeiture constituted punishment.


I.


The Fifth Amendment's Double Jeopardy Clause reads: "nor shall any person be subjec
the same offence to be twice put in jeopardy of life or limb."  U.S. Const., Amdt.
Supreme Court has explained that "the Double Jeopardy Clause protects against three
distinct abuses: a second prosecution for the same offense after acquittal; a secon
prosecution for the same offense after conviction; and multiple punishments for the
offense."  United States v. Halper, 490 U.S. 435, 440 (1989). The instant case invo
the third of these protections, a protection which "has deep roots in our history a
jurisprudence."  Id.

18

In Witte v. United States, ___ U.S. ___, 115 S.Ct. 2199 (1995), the Supreme Court r

held that although a petitioner had not yet been twice convicted, his "multiple

punishment" claim was ripe for appellate review before trial because "the Double Je

Clause protects against more than the actual imposition of two punishments for the

offense; by its terms, it protects a criminal defendant from being twice put in jec

for such punishment." Id. at 2204-2205. In the instant case, if defendant was pun

by the forfeiture, the prospect of a criminal trial and further punishment places h

jeopardy of prohibited multiple punishments. Thus, it is appropriate and required

adjudicate his claim prior to trial and on appeal, before he is subjected to the ri

second punishment for the same offense.

II.

I turn to the merits of defendant's double jeopardy claim. The question presented

whether forfeiture pursuant to 21 U.S.C.A. §881(a)(6) (West 1981) constitutes punis

for purposes of the Double Jeopardy Clause. Three recent Supreme Court decisions g

our analysis. See Department of Revenue v. Kurth Ranch, ___U.S. ___, 114 S.Ct. 193

(1994); Austin v. United States, ___U.S. ___, 113 S.Ct. 2801 (1993); United States

Halper, 490 U.S. 435 (1989).

In United States v. Halper, the Supreme Court considered "whether and under what

circumstances a civil penalty may constitute 'punishment' for the purposes of doubl

jeopardy analysis." 490 U.S. at 436. The Court fashioned the following test: "a c

sanction that cannot fairly be said solely to serve a remedial purpose, but rather

only be explained as also serving either retributive or deterrent purposes, is

19

punishment." Id. at 448. Specifically, the Court held that the Double Jeopardy Cla

prohibition against multiple punishments for the same offense was violated where a

defendant who already had been punished in a criminal prosecution was subjected to

additional civil sanction to the extent that the second sanction served the traditi

goals of punishment--deterrence and retribution. Id. at 449.

The Supreme Court recently applied the Halper test in Department of Revenue v. Kurt

Ranch, supra. There, the Supreme Court considered whether a state tax imposed on t

possession and storage of dangerous drugs constituted a second punishment for purpo

the Double Jeopardy Clause. The Court began its discussion by noting that although

Amendment's text only mentions harms to "life or limb," it is well settled that the

Amendment covers monetary penalties. 114 S.Ct. at 1941 n.1. Recognizing that Halpe

decided that the legislature's description of a statute as civil is not determinati

the Double Jeopardy issue, the Court focused instead on whether the tax had punitiv

characteristics that subjected it to the constraints of the Double Jeopardy Clause.

Ranch, 114 S.Ct. at 1945. The Court found it indicative of penal intent that the t

conditioned on the commission of a crime and was exacted only after the taxpayer ha

arrested for the precise conduct that gave rise to the tax obligation. Id. at 1947

Court held that the drug tax was punitive in nature and therefore must be imposed i

first proceeding or not at all. Id. at 1948.

In Austin v. United States, supra, the Supreme Court relied heavily on the rational

Halper to determine whether civil forfeiture pursuant to 21 U.S.C.A. §§ 881(a)(4) a

(West Supp. 1995) constitutes punishment for purposes of the Eighth Amendment's Exc

Fines Clause. Austin, 113 S.Ct. at 2806. However, rather than focusing, as the Co

20

done in Halper, on the goals of the sanction in the individual case, the Austin Cou

reasoned that in the forfeiture context it made more sense to focus on the forfeitu

statute as a whole because "[t]he value of the conveyances and real property forfei

under §§881(a)(4) and (a)(7), . . . vary so dramatically that any relationship betw

Government's actual costs and the amount of the sanction is merely coincidental."

113 S.Ct. at 2812 n.14. See also Kurth Ranch, 114 S.Ct. at 1948 (focusing on goals

statute as a whole). The Court concluded that forfeitures under §§ 881(a)(4) and (

are properly considered punishment because: nothing in the sections contradicts the

historical understanding of forfeiture as imposing punishment; the sections focus o

owner's culpability by providing for the "innocent owner" defense and by tying forf

directly to the commission of drug offenses; and Congress understood the sections a

serving the goals of deterrence and punishment. Austin, 113 S.Ct. at 2810–11.

Thus, we know from Halper and Kurth Ranch that a civil sanction can constitute puni

for double jeopardy purposes and that the proper focus is whether a civil sanction

punitive in nature. Moreover, we know from Austin that civil forfeiture pursuant to

U.S.C.A. §§ 881(a)(4) and (a)((7) is punishment for purposes of the Excessive Fines

Clause.

The Supreme Court's holding in Austin that forfeiture pursuant to §881(a)(4) and (a

constitutes punishment is controlling for purposes of § 881(a)(6) (dealing with mon

negotiable instruments, and securities), the section at issue in this case.[0] The A

---

[0]The following items are subject to forfeiture under §881(a)(6):

All monies, negotiable instruments, securities, or other things of value
furnished or intended to be furnished by any person in exchange for a controll
substance in violation of this subchapter, all proceeds traceable to such an

21

Court's historical analysis of forfeiture as punishment and its reliance on the legislative history of § 881 are equally applicable in the instant case. Moreover, the sections of the forfeiture statute at issue in <u>Austin</u>, §881(a)(6) also includes innocent owner defense, which focuses on the culpability of the owner in a way that it look more like punishment. <u>See</u> <u>Austin</u>, 113 S.Ct. at 2810-11. Section 881(a)(6) conditioning of forfeiture on a violation of the Controlled Substances Act is also indicative of Congress' punitive intent. <u>See</u> <u>id.</u> at 2811.

Further, the legislative history of § 881(a)(6) evidences Congress's intent to puni to deter. Senator Culver, a sponsor of the legislation, said it would "provide the States with strong new weapons to . . . strike at the profits of illegal drug trafficking." 124 Cong. Rec. S17644 (Oct. 7, 1978). Senator Nunn, also a sponsor legislation, explained that "[t]he criminal justice system can only be effective if is a meaningful deterrent. It is important that the offender be aware of the risk running." 124 Cong. Rec. S11965 (July 27, 1978). "We cannot forget that profit, astronomical profit, is the base motivation of drug traffickers." <u>Id.</u> By "strikin against the profits from illicit drug trafficking" the enactment of § 661(a)(6) wou enhance "the punitive and deterrent purposes of the Controlled Substances Act," whi would then "have greater impact on drug trafficking." <u>Id.</u>

---

exchange, and all monies, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except tha no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that own to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C.A. § 881(a)(6) (West 1981).

The specific holding in <u>Austin</u> is that civil forfeiture constitutes punishment for

purposes of the Excessive Fines Clause.  In contrast, this case involves a claim un

Double Jeopardy Clause, yet I believe that <u>Austin</u> is controlling for double jeopard

claims as well.  Significantly, in <u>Austin</u> the Supreme Court relied on <u>Halper</u>, which

involved the Double Jeopardy Clause, to decide whether a civil sanction constituted

punishment for purposes of the Excessive Fines Clause.  <u>See</u> 1 David B. Smith, <u>Prose</u>

<u>and Defense of Forfeiture Cases</u>, ¶ 12.10[2], at 12-136 (1994) ("The Supreme Court's

decision in <u>Austin v. United States</u>, makes it clear that <u>Halper</u>'s double jeopardy

protections do apply to the vast majority of civil forfeiture cases.").

Recently, the Ninth Circuit similarly relied on <u>Austin</u> and <u>Halper</u> in holding that c

forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) constitutes punishment which trigger

protections of the Double Jeopardy Clause.  <u>United States v. $405,089.23 United Sta</u>

<u>Currency</u>, 33 F.3d 1210 (9th Cir. 1994), <u>opinion amended on denial of rehearing</u>, 56

(9th Cir. 1995).  <u>Cf.</u> <u>United States v. Ursery</u>, ___ F.3d ___, No. 94-1127, 1995 WL 4

(6th Cir. July 13, 1995) (holding that civil forfeiture pursuant to §881(a)(7) foll

criminal conviction for the same offense constituted double jeopardy).  The Ninth C

reasoned that:

> the only fair reading of the Court's decision in <u>Austin</u> is that it resolves th
> 'punishment' issue with respect to forfeiture cases for purposes of the Double
> Jeopardy Clause as well as the Excessive Fines Clause.  In short, if a
> forfeiture constitutes punishment under the <u>Halper</u> criteria, it constitutes
> 'punishment' for purposes of both clauses.

33 F.3d at 1219.  Thus, the court held that the government violated the Double Jeop

Clause by obtaining criminal convictions against the defendant and then continuing

pursue the forfeiture action.  The court concluded by discussing the practical effe

*Austin* on the government's prosecution of cases:

Because in the case of statutes like those before us a criminal prosecution an
a forfeiture action based on the same offense must now be brought in the same
proceeding--that is, the same indictment--the government will often be forced
choose whether to include a criminal forfeiture count in the indictment (and
thus forego the favorable burdens it would face in the civil forfeiture
proceeding) or to pursue only the civil forfeiture action (and thus forego the
opportunity to prosecute the claimants criminally). If, in such cases, the
government wishes both to obtain forfeiture and to impose other forms of
criminal punishment, it 'will have to rely to a much greater extent on crimina
forfeiture.'  It is entirely reasonable to put the government to this choice.
After *Austin*, the law requires it.

33 F.3d at 1222 (citation omitted).  I find the Ninth Circuit's reasoning persuasiv

The government counters that under *Austin* only civil forfeitures that are found to

excessive are to be considered punishment. However, the government misstates the ho

in *Austin*.  *Austin* holds that all forfeitures under §§ 881(a)(4) and (a)(7) are mea

part to punish and therefore can run afoul of the Excessive Fines Clause.  *Austin*,

S.Ct. at 2812.  The *Austin* court left the issue of whether the forfeiture was

constitutionally excessive to the district court in the first instance.  *Id.*

The government also contends that application of *Halper*'s "rational-relation" test-

whether the amount of the sanction appears to be rationally related to the damages

by the wrongful conduct of the defendant--results in the conclusion that the instan

forfeiture of defendant's property does not constitute punishment.  However, in *Aus*

the Supreme Court found that the "rational-relation" test was inapplicable in the

forfeiture setting, and, instead, looked to the purpose behind the forfeiture statu

itself, concluding that forfeiture serves in part to punish.  113 S.Ct. at 2812 n.1

agree that in the forfeiture context it does not make sense to compare the amount s

24

with the government's damages and actual costs; the value of the property seized is
fortuitous, and thus "any relationship between the Government's actual costs and th
amount of the sanction is merely coincidental."  Austin, 113 S.Ct. at 2811-12, 2812
Moreover, the government has failed to demonstrate on the record how the forfeited
property relates to its cost of investigation and prosecution of defendant's case.
Finally, the government argues that to the extent that the forfeiture in the instan
can be considered punishment, it is punishment imposed against the property itself
against the owner of the property.  However, the Supreme Court in Austin stressed t
has consistently recognized that in rem forfeiture serves, at least in part, to pur
owner.  113 S.Ct. at 2810. Moreover, the Court made clear that forfeiture of proper
as cars and real estate under the current forfeiture statute is dependent not on th
criminal nature of the property, but on the illegal use their owners make of them.
Austin, 113 S.Ct. at 2810-11.  The same reasoning applies to monies forfeited under
§881(a)(6).  Therefore, it is the owners who are punished by the forfeiture of such
property.  Id. at 2811.

The Supreme Court in Halper addressed the question of what constitutes punishment f
purposes of the Double Jeopardy Clause.  490 U.S. at 436.  The Halper Court announc
the proper inquiry is whether the sanction serves the goals of punishment, i.e.
retribution or deterrence.  Id. at 448.  In Austin, the Court held that Congress in
for the forfeiture of property pursuant to §§  881(a)(4) and (a)(7) to deter and to
punish.  See Austin, 113 S.Ct. at 2811.  Similarly, for reasons previously discusse
881(a)(6) was intended to deter and to punish. Therefore, I conclude that forfeitur
pursuant to § 881(a)(6) constitutes punishment for purposes of the Double Jeopardy

25

III.

Having decided that forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) constitutes puni[shment]
for purposes of the Double Jeopardy Clause, I turn to the question of whether the s[equence]
of the proceedings makes a constitutional difference.  In all of the Supreme Court [cases]
previously discussed, the criminal sanction preceded the civil sanction and thus it [was the]
second, civil sanction that has been barred under the Double Jeopardy Clause. By co[ntrast,]
in the instant case defendant asks us to apply the Double Jeopardy Clause to bar hi[s]
criminal prosecution.

The Court noted in Kurth Ranch that the statute at issue did not raise the question [of]
whether a civil proceeding which is designed to inflict punishment may bar a subseq[uent]
criminal proceeding.  114 S.Ct. at 1947 n.21.  In his dissent, Justice SCALIA warne[d that]
although the majority confronted the relatively easy task of disallowing a civil pe[nalty]
after a criminal sanction already had been imposed, cases in which criminal penalti[es are]
at stake will demand much more of courts.  Id. at 1958-59 (SCALIA, J. dissenting).
Justice SCALIA opined that the order of punishment cannot possibly make a constitut[ional]
difference.  Id. at 1958. I agree.

There is no reason why the sequence of the proceedings should make a difference in [the]
constitutional analysis.  In other words, the holdings in Halper and Austin apply e[qually]
to cases in which the civil sanction precedes the criminal sanction. "[T]he labels [of]
'criminal' and 'civil' are not of paramount importance."  Halper, 490 U.S. at 447.
Instead, the critical inquiry remains whether the proceeding constitutes punishment[.]

26

double jeopardy purposes and whether the defendant is receiving or is at risk of re

multiple punishments for the same offense.  Several other circuits also have held t

order of the proceedings, civil or criminal, does not affect the double jeopardy

determination.  See United States v. Furlett, 974 F.2d 839, 843 n.2 (7th Cir. 1992)

United States v. Sanchez-Escareno, 950 F.2d 193, 200 (5th Cir. 1991), cert. denied,

U.S. ___, 113 S.Ct. 123 (1992); United States v. Mayers, 897 F.2d 1126, 1127 (11th

cert. denied, 498 U.S. 865 (1990); cf. United States v. Ursery, ___ F.3d ___, No. 9

1995 WL 411189 (6th Cir. July 13, 1995) (finding double jeopardy where civil forfei

preceded criminal prosecution).

IV.

I next consider whether it makes a difference in the double jeopardy analysis that

defendant in the instant case did not participate in the forfeiture proceedings.  T

district court's ruling is based on the stated rationale that "jeopardy ha[d] not a

pursuant to the administrative forfeiture proceeding," presumably because defendant

not contest the forfeiture.  United States v. Baird, No. 94-0215, Order, at n.1 (E.

March 14, 1995). Similarly, the majority concludes that administrative forfeiture c

never constitute punishment for purposes of the Double Jeopardy Clause because: (1)

property is ownerless, i.e. no one has made a claim and/or filed a cost bond, and t

taking of ownerless property punishes no one; and (2) administrative forfeiture doe

place in jeopardy the person whose property is so forfeited, because it does not in

judicial proceeding.

27

I believe that, if a defendant can prove that he was the owner of the property seiz[ed,] participation in the forfeiture proceedings is not and should not be a precondition [to his] claim of double jeopardy.  A defendant may choose not to participate because the allegations are true, or for fear that a claim of ownership could be utilized agai[nst him] in the criminal proceeding.  For instance, the government alleged in this case that [the] defendant owned the seized property and that the property was used or acquired as a [result] of a drug-related offense.  If the allegations are true, what purpose would be serv[ed by] defendant's participation in the forfeiture proceeding?

Moreover, a claim of ownership in the forfeiture proceeding conceivably could be us[ed] against defendant in the criminal proceeding. Thus, requiring defendant to particip[ate in] the forfeiture proceeding as a precondition to a double jeopardy claim would force [a] defendant to choose between waiving his privilege against self-incrimination or wai[ving] his right to assert a double jeopardy violation.  The Supreme Court stressed in Sim[mons v.] United States, 390 U.S. 377 (1968), that one constitutional right need not be surre[ndered] in order to assert another.  Id. at 394. In Simmons, the Court found that an unconstitutional dilemma was created when defendant was required to surrender his F[ifth] Amendment privilege against self-incrimination in order to establish his standing t[o] assert an arguably valid Fourth Amendment claim.  Id.  The Court resolved the dilem[ma by] holding that: "when a defendant testifies in support of a motion to suppress evide[nce on] Fourth Amendment grounds, his testimony may not thereafter be admitted against him [at] trial."  Id. Similarly, in the instant case, we refuse to subject defendant to such [an] unconstitutional dilemma by requiring him to intervene in the forfeiture proceeding [in] order to preserve his rights under the Double Jeopardy Clause.   The issue should b[e]

28

whether defendant was the owner, not whether he filed a proper and timely claim of

ownership in the forfeiture proceeding.  He is punished if his property is forfeite

irrespective of whether or not he participated.  Hence, there should be no distinct

between administrative and civil forfeiture; in either instance, a defendant must

establish ownership and punishment before he can claim double jeopardy.  See also S

supra, ¶ 12.10, at 12-141 n.33.1 ("[A] rule which would require property owners to

claim and go through the motions of contesting a civil forfeiture merely to preserv

double jeopardy issue has little to recommend it.  Tens of thousands of uncontested

forfeitures would soon find their way into court.").

The majority relies on Serfass v. United States, 420 U.S. 377 (1975), in holding th

Double Jeopardy Clause requires that defendant participate in two judicial proceedi

Maj. op. at __[Typescript at 16 n.11].  However, Serfass, in contrast to the instan

did not involve a "multiple punishments" claim and does not stand for the propositi

multiple judicial proceedings are a precondition to all double jeopardy claims.  In

case, defendant claims that he was punished by the forfeiture of his monies and tha

on the instant indictment would subject him to multiple punishments for the same of

The issue is thus whether defendant is at risk of being twice punished for the same

offense, not whether defendant is at risk of being twice tried.

Lastly, in United States v. Torres, 28 F.3d 1463 (7th Cir. 1994), the Seventh Cir

held that the administrative forfeiture of monies did not bar defendant's sentence

imprisonment.  I am unpersuaded by the Torres decision to the extent that it holds

unless a defendant participates in the forfeiture proceeding, he cannot claim doubl

jeopardy.  Additionally, this case is factually distinguishable from Torres.  Defer

29

Torres and Olivares were arrested and their cash seized when they attempted to buy

from "sellers" who turned out to be federal agents.  <u>Torres</u>, 28 F.3d at 1464.  The

were administratively forfeited, and subsequently defendant Torres was convicted in

separate criminal proceeding.  <u>Id.</u>  On appeal, Torres argued that his criminal sent

was barred by the Double Jeopardy Clause.  <u>Id.</u>  In rejecting Torres's double jeopar

claim, the court stressed that it was not clear who owned the forfeited funds and

speculated that "perhaps he [Torres] was just a courier, making the buy on behalf o

undisclosed principal." <u>Id.</u> at 1466.  In contrast, the ownership of the funds in th

instant case is not honestly contested.


V.


Assuming that defendant can establish that he was the owner of the forfeited proper

<u>nature</u> of the property forfeited should affect one's ability to claim double jeopar

For illustrative purposes, I will divide property subject to forfeiture under §881

two categories.[0]

The first category includes property which is dangerous and/or illegal <u>per</u> <u>se</u> and t

subject to destruction or removal from society. The forfeiture of such property can

constitute punishment for purposes of the Double Jeopardy Clause because its forfei

may be characterized as "remedial."  This category includes:

---

[0]Moreover, we need not even consider whether confiscating property that a defendant
not have title to, i.e. stolen property, is punishment for double jeopardy purposes
recognize that the government can immediately confiscate such property and is not r
to institute forfeiture proceedings.

30

all controlled substances which have been manufactured, distributed, dispensed, acquired, § (a)(1);

all raw materials, products, and equipment which are used in manufacturing any co substance, § (a)(2);

all property which is used as a container, § (a)(3);

all books, records, and research, including formulas, microfilm, tapes, and da which are used in violation of this subchapter, § (a)(5);

all controlled substances which have been possessed in violation of this subchapter, § (a)(8);

all listed chemicals, all drug manufacturing equipment, all tableting machines all encapsulating machines, and all gelatin capsules, § (a)(9);

any drug paraphernalia, § (a)(10);

any firearm, § (a)(11).

21 U.S.C.A. § 881(a) (West 1983 & Supp. 1995).

The items included in the first category are either illegal per se and/or dangerous society in general or to law enforcement agents in particular. The Austin Court co that "the forfeiture of contraband itself may be characterized as remedial because removes dangerous or illegal items from society." 113 S.Ct. at 2811 (citing United v. One Assortment of 89 Firearms, 465 U.S. 354 (1984), which involved forfeiture of firearms). Indeed, Congress recognized that such property is dangerous by providin its summary forfeiture and destruction. Specifically, section 881(f)(1) (West Supp provides that all controlled substances, all raw materials, and any equipment or co subject to forfeiture, which cannot be separated safely from such raw material or p shall be deemed contraband and summarily forfeited to the United States. Section 88 (West Supp. 1995) allows the government to destroy such property. See also H.R. Re

31

101-681(I), 101st Cong., 2d Sess. (1990) reprinted in 1990 U.S.C.C.A.N. 6472, 6506 (providing for summary forfeiture and destruction of dangerous substances and the equipment or containers from which these substances cannot be safely separated "bec the dangers they create for law enforcement agents"). Similarly, Congress provided the selling and interstate transport of drug paraphernalia is illegal, § 863(a) (We Supp. 1995), and that drug paraphernalia is subject to seizure, forfeiture, and destruction, § 863(c) (West Supp. 1995).

The second category consists of property forfeited pursuant to §§881(a)(4), (6), such as boats, planes, cars, real property, and monies, which courts have distingui "derivative contraband." Derivative contraband has been defined as articles which inherently illegal, but are used in an unlawful manner. See United States v. Farre F.2d 1341, 1344 (D.C. Cir. 1979) (monies used in drug transaction are derivative contraband). The forfeiture of such property may serve as a basis for a double jec claim because, as previously discussed, the forfeiture of property pursuant to §§ 881(a)(4), (6), and (7) is punitive in nature.

VI.

Finally, I pose the question whether the source of the property seized should affec determination of double jeopardy. Two scenarios illustrate my concerns: In the fi scenario, a person acquires a house or car by honest means. If that property is fc because it is utilized in connection with criminal activity, the owner is clearly punished. Under such circumstances, a prior or subsequent criminal proceeding base

32

the same charges, which justified the forfeiture, would implicate double jeopardy.

concern is with the second scenario, in which a defendant acquires property by dish

means. For instance, monies passed to a person in a drug sale are immediately sei

ultimately forfeited. I have difficulty in concluding that such forfeiture, i.e. t

seizure of monies derived from an illegal transaction, bars criminal prosecution fo

drug sale. I acknowledge that the monies seized technically are the property of th

dealer, and, thus, their forfeiture constitutes punishment in the ordinary sense of

word; but I ponder whether it does or should constitute punishment for double jeopa

purposes. The issue is further complicated if the forfeiture involves property ac

from the expenditure of monies illegally obtained—the indirect rather than the dir

acquisitions of illegal activity.

Since the majority does not find double jeopardy because of the nature of the forfe

proceeding, this distinction is not addressed. However, I find it worthy of serious

consideration. Moreover, I recognize that if my distinction were to be adopted, a

secondary issue would have to be resolved concerning the applicable burden of proof

where to place it.

VII.

I would vacate the judgment of the district court and remand for further proceeding

consistent with this opinion.